IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:13cr59 (LMB) |
| | ) | 1:14cv911 (LMB) |
| DOUGLAS LEE PAYNE, JR., | ) | |
| | ) | |
| Movant. | ) | |

## MEMORANDUM OPINION

Before the Court is Douglas Lee Payne, Jr.'s ("Payne" or "movant") pro se Motion to
Vacate, Set Aside, or Correct  Sentence by a Person in Federal Custody pursuant to 28 U.S.C.
§ 2255 ("§ 2255 Motion"), in which he argues that he received constitutionally ineffective
assistance from his retained attorney, Daniel T. Lopez ("Lopez"). Specifically, Payne argues
that Lopez failed to review the state search warrants under which the evidence used against him
was seized and failed to file motions to suppress evidence that was either seized without a
warrant or seized under defective warrants. The government has responded to the motion
attaching the search warrants and affidavits at issue, as well as an affidavit from Lopez, and
Payne has filed a 134-page reply.

Having reviewed the entire record, the Court finds no merit to Payne's motion, which
will be dismissed without the need for an evidentiary hearing.

## I. BACKGROUND

On January 9, 2009, Payne was sentenced in the Circuit Court of Fairfax County to two
years incarceration, with one year suspended, and placed on three years of supervised probation,
as a result of pleading guilty to use of a communications system to sexually solicit a minor in
violation of Virginia Code § 18.2-374.3. That conviction grew out of an investigation into
Payne's conduct with a 15-year-old girl with whom he had consensual sexual relations. During

their relationship, Payne sent the girl naked pictures of his penis.  Presentence Investigation

Report ¶ 50.  As special conditions of Payne's state probation he was prohibited from having

"any contact with anyone under the age of 18.  Contact is defined as physical, verbal, written, or

third party."  Gov. Resp. Opp'n Pet'r's Mot. § 2255 ("Gov. Resp."), Ex. 3 (Sex Offender Special

Instructions, monitoring condition D).

       Fairfax County Detective Michelle DuBois ("Detective DuBois"), who is assigned to the

police department's Child Exploitation Unit, was contacted around November 14, 2011, by the

mother of a 12-year-old girl who was concerned that her daughter had befriended an adult male

named Douglas Payne on Facebook.  Gov. Resp., Ex. 6 ¶¶ 1, 14 (Detective DuBois' federal

affidavit from 2012).  The mother had viewed the online contacts and sent Detective DuBois

screen shots of the communications.  Id. ¶¶ 14-15.  One of the communications included

questions by Payne asking the girl how old she was (she answered 12) and asking her if she had

any boyfriends.  Id. ¶ 15.  Based on that information, Detective DuBois checked Payne's name

with the Virginia State Police Sex Offenders and Crimes Against Minors Registry website.  Id.

After finding that defendant was registered as a result of his 2009 conviction, she contacted

Payne's state probation officer, Senior Probation Office Thomas A. Quinn, who went before a

state magistrate on December 28, 2011, to obtain a search warrant for Payne's residence.  Id.

¶ 16.  That search warrant described the things to be seized and searched as including

"computers; electronic devices capable of storing electronic data; . . . [and] cellular (mobile)

telephones."  Gov. Resp., Ex. 5 (search warrant for Payne's residence).  The search warrant,

which was issued by Chief Magistrate Claude J. Behler at 11:20 a.m. on December 28, 2011,

stated that the items to be seized and searched were in relation to a probation violation and that

the various communications and other items to be seized and searched specifically included

"records evidencing the age of other victims of sexual exploitation of minors" and materials "that depict unclothed minors." Id.

On the same day, an arrest warrant was issued for Payne for violating conditions of his probation. Gov. Resp., Ex. 6 ¶ 16. When the agents arrived at Payne's residence, he was not home. Id. ¶ 17. His probation officer called him and he returned home. Id. According to Detective DuBois' federal affidavit, Payne was given Miranda warnings, waived his rights, admitted using his cell phone to send text messages to people under 18 years of age, and admitted sending nude pictures of himself and getting nude pictures of a girl who was less than 15 years old. Id. ¶¶ 18-19.

Based on the violation of his probation, defendant was sentenced to serve one year. Further investigation of the contents of the cell phone and laptop retrieved during the search of Payne's residence revealed extensive sexual images of minors. Id. ¶¶ 20, 22. On November 26, 2012, a federal arrest warrant issued for Payne, who went directly into federal custody once he completed his sentence for violating probation.

On February 6, 2013, a grand jury returned a four-count indictment charging Payne in Count 1 with production of child pornography in violation of 18 U.S.C. § 2251(a), in Count 2 with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), in Count 3 with attempted use of an interstate facility to entice a minor to engage in a criminal sexual activity in violation of 18 U.S.C. § 2422(b), and in Count 4 with attempted travel to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423.

On April 8, 2013, pursuant to a written plea agreement, Payne entered guilty pleas to Count 3 of the indictment, as well as to a two-count criminal information charging two counts of production of child pornography in violation of 18 U.S.C.§ 2251(a) and (e). He was sentenced

on July 5, 2013, to 300 months imprisonment on each of Counts 1 and 2 of the criminal

information and 292 months imprisonment on Count 3 of the indictment, all sentences to run

concurrent, as well as a term of supervised release to run for life, among other penalties.

On July 18, 2014, Payne filed his § 2255 Motion. Although the government has argued

that the motion is untimely, Payne has provided a sufficient explanation for the few days delay to

justify the late filing. Therefore, the motion will be considered on its merits.

## II. DISCUSSION

### A. <u>Standard of Review</u>

A motion under 28 U.S.C. § 2255 provides for collateral attack on a conviction or

sentence that was imposed in violation of the United States Constitution or laws, where the court

lacked jurisdiction to impose the sentence, where the sentence was in excess of the maximum

authorized, or where the sentence or conviction is otherwise subject to collateral attack. To

prevail, a movant bears the burden of proving his grounds for collateral relief by a preponderance

of the evidence. <u>Vanater v. Boles</u>, 377 F.2d 898, 900 (4th Cir. 1967).

Relief under § 2255 is designed to correct for fundamental constitutional, jurisdictional,

or other errors, and it is therefore reserved for situations in which failing to grant relief would

otherwise "inherently result[] in a complete miscarriage of justice." <u>United States v. Addonizio</u>,

442 U.S. 178, 185 (1979) (quoting <u>Hill v. United States</u>, 368 U.S. 442, 428 (1962)). Moreover, a

motion pursuant to § 2255 "may not do service for an appeal," and claims that have been waived

by a failure to appeal are therefore procedurally defaulted unless the movant can show cause and

actual prejudice. <u>United States v. Frady</u>, 456 U.S. 152, 165-67 (1982); <u>United States v.</u>

<u>Maybeck,</u> 23 F.3d 888, 891-92 (4th Cir. 1994) (applying standard to unappealed guilty pleas).

An exception applies, however, when a defendant brings a claim of constitutionally ineffective

assistance of counsel, which can be raised in a collateral attack on his conviction or sentence.

4

See <u>United States v. Martinez</u>, 136 F.3d 972, 979 (4th Cir. 1998); <u>United States v. DeFusco</u>, 949 F.2d 114, 120-21 (4th Cir. 1991).

## B. <u>Ineffective Assistance of Counsel</u>

To establish ineffective assistance of counsel Payne must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which requires a showing of both deficient performance by counsel and resulting prejudice to the defendant from that deficient performance. <u>Id.</u> at 687. Because it "is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence" and because a wide range of legitimate defense strategies are possible in a given case, "scrutiny of counsel's performance must be highly deferential." <u>Id.</u> at 689. Moreover, Payne must make an additional showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u>; <u>see also id.</u> at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

## C. <u>The Movant's Claims</u>

Payne premises his request for relief on three grounds, each of which is a variation on one theme—that he was denied the effective assistance of counsel by Lopez's failure to file motions to suppress evidence seized either without a warrant or seized under a defective warrant. Payne does not make any claim of factual or actual innocence of the offenses to which he pleaded guilty. Moreover, and dispositive of his motion, he does not attack the validity of his guilty plea. The reason his failure to raise issues about his guilty plea is dispositive is that during his plea he unequivocally waived any defects in how the evidence was obtained. Specifically, during his colloquy, Payne, who was under an affirmation to answer the Court's questions truthfully, acknowledged being 31 years old and having a high school education with no problem

5

understanding English. Tr. Plea 3. He denied suffering from any physical or mental medical conditions, denied having taken any medication within 24 hours of his court appearance, and denied being under the influence of alcohol or drugs. Id. at 4. When the Court reached the point in the plea colloquy explaining the various rights Payne was waiving by pleading guilty rather than going to trial, he was advised that:

> If you continued with a not guilty plea your counsel could try to attack the prosecution's case, and there are different ways in which that can be done. In this type of case, for example, the age of the victim is quite important, and if the government did not have sufficient proof that they were underage in some—that could very well undercut any ability to convict you of that particular count.
>
> They have to show the interstate nexus. They have—if there are any confessions or statements that you made, there may or may not be a basis to have them suppressed.
>
> I don't know what, if any, defenses you might have, but what you need to appreciate is that by pleading guilty, you're giving up such defenses.

Id. at 30-31. When asked if he understood that he was giving up those types of defenses, which included suppression motions, Payne answered "Yes." Id. at 31.

Even if Payne had not explicitly waived any defects in the government's evidence, as a general proposition, a valid guilty plea constitutes a waiver of all non-jurisdictional defects, including the right to pursue a motion to suppress, unless the defendant explicitly reserved that right. See Parker v. Ross, 470 F.2d 1092, 1093 (4th Cir. 1972); see also Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). In neither the plea agreement nor during the plea colloquy did Payne reserve any suppression issues for appeal.

In addition to not attacking the validity of his guilty plea, Payne has also failed to rebut

6

any of the statements Lopez made in his affidavit. Specifically, in his affidavit, made under the penalty of perjury, Lopez stated that he met several times with Payne who admitted he had confessed, did not have a legal defense, "specifically told counsel that he did not want to have a trial by either judge or jury," and "requested [sic] to arrange a plea bargain that would minimize his sentence." Gov. Resp., Ex. 9 ¶¶ 4, 13, 14. Lopez also explained that he had known the detectives involved in the case for over 15 years and had spoken directly with Detective DuBois before defendant's preliminary hearing. Id. ¶¶ 1-2. During that hearing he heard testimony about the state search warrants and the evidence seized under them. Id. ¶ 3.

Contrary to Payne's allegations that Lopez failed to review any search warrants and affidavits, Lopez averred that he did review the warrant and affidavit for the search of Payne's truck. Id. ¶ 6. In light of what he read in the affidavit and heard during the preliminary hearing, Lopez concluded there was no need to file suppression motions. Id.

Despite submitting a 134-page reply brief, to which defendant attached some exhibits, he did not submit an affidavit refuting any of Lopez's statements. Specifically, Payne has not provided an affidavit or even argued that Lopez's account was inaccurate. Therefore, the unrefuted evidence is that Payne never wanted to contest the case, did not ask his counsel to pursue any motions to suppress, and does not dispute that he confessed to having sent and received nude photos to and from minors.

Lastly, as the government argues in its opposition, the warrants and affidavits at issue were not defective. Although the affiant did not provide the date of the message sent to the 12-year-old, which was mentioned in the affidavits, staleness is a flexible concept requiring a court to "look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." U.S. v.

McCall, 740 F.2d 1331, 1336 (4th Cir. 1984).  Given the history of Payne's sexual attraction to

minors and the extensive recitation in the affidavits about the practices of child predators, as well

as the clear statement that the investigation into Payne was active as of November 22, 2011, the

warrants were not based on stale information.  Moreover, even if there were errors in the

affidavits, they were only errors of omission.  Payne has not argued that the affidavits contained

any materially false information.  Therefore, on this record there is no basis to find that the

officers executing the warrants were not entitled to rely in good faith on the validity of the

warrants.  See U.S. v. Leon, 468 U.S. 897, 920-21 (1984).

### III.  CONCLUSION

For all the above-stated reasons, Payne's  Motion to Vacate, Set Aside or Correct

Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 fails to establish any

violations of the Constitution or laws of the United States or that the conviction at issue could in

any respect be considered a miscarriage of justice.  Payne had the assistance of competent

counsel throughout this case,[1] the tactical decisions made by counsel were reasonable and

acquiesced to by Payne, and Payne's knowing and voluntary waiver of any defects in his case

render this § 2255 Motion meritless.  Accordingly, the motion will be dismissed by an

appropriate Order to be issued with this Memorandum Opinion.

Entered this _6th_ day of February, 2015.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

---

[1] Lopez was in a very unique position to represent Payne in the federal case because his partner,
Edward John Nuttall, III, had represented Payne in the Fairfax County case and had been
peripherally involved in the federal case.  See Tr. Plea 4-5, 37-39.

8